## WIEDEMAN v. HOUSTON BUILDING & LOAN ASS'N.

### No. 3360.

Court of Civil Appeals of Texas. Beaumont.

Oct. 26, 1938.

Rehearing Denied Nov. 2, 1938.

Charles Murphy, of Houston, for appellant.

Elledge & Elledge, of Houston, for appellee.

WALKER, Chief Justice.

This appeal is by writ of error, prosecuted to the Galveston Court of Civil Appeals, on our docket by order of transfer by the Supreme Court. The parties, Tera Wiedeman, plaintiff in error, and Houston Building & Loan Association, defendant in error, will be referred to as appellant and appellee.

The action was in trespass to try title, on the general issue and on pleas of limitation, by appellee against appellant to recover the title and possession of lots 46 and 47 "of Wrightwood Addition to the City of ·Houston." Appellant answered by pleas of general denial and not guilty; by trial amendment, filed after all the evidence had been introduced, she specially plead that, at the time appellee acquired its lien against the property, and · title by trustee's sale, it was her homestead, and that in making the improvements on the property she expended about $1,400 of her personal funds. She plead that appellee was not an innocent holder, and by her pleadings offered to pay the amount of its lien; her prayer was "that she have the right to pay the balance due on her contract and recover her title." On trial to the court without a jury, judgment was rendered in favor of appellee against appellant for the title and possession of the property in controversy.

The court filed conclusions of fact and law as follows: The lots in controversy were a part of the Wrightwood Addition to the City of Houston, out of the John Austin Survey, granted by the Mexican Government on the 20th day of July, 1824. The lots in controversy were conveyed by William A. Wilson Realty Company to D. C. Wright by deed dated January 14, 1909, filed for record January 15, 1909, and were by Wright conveyed to O. P. Steeger by deed dated the 8th day of May, 1923, filed for record the 8th day of May, 1923; and were by Steeger conveyed to Miss Thelma L. Wiedeman, appellant's daughter, by deed dated the 25th day of April, 1923, filed for record the 9th day of May, 1923; the deed to Miss Wiedeman retained a ·vendor's lien to secure the purchase money note for $6,000, payable to the grantor. By deed of trust dated the 25th day of April, 1923, filed for record the 9th day of May, 1923, Miss Wiedeman conveyed the property to Harry W. Freeman, as trustee, to secure· the payment of the $6,000 vendor's lien note. On the 9th day of February, 1928, Miss Wiedeman conveyed the property by deed of trust, filed for record the 9th day of March, 1928, to Raymond P. Elledge, trustee, to secure her note in the sum of $5,000, payable to appellee; again, by deed of trust, dated the 31st day of October, 1933, filed for record the 7th day of November, 1933, Miss Wiedeman conveyed the property to Elledge to secure her note for $3,150, payable to appellee. Under the terms of the deed of trust, dated the 31st day of October, 1933, Elledge, as trustee, by deed dated the 4th day of June, 1935, filed for record the 22d day of August, 1935, sold and conveyed the property in controversy to appellee.

By assignment dated the 4th day of May, 1923, O. P. Steeger transferred the $6,000 vendor's lien note, described above, to M. Epstein, and through a regular chain of transfers, the last one dated the 28th day of February, 1928, filed for record the 9th day of March, 1928, appellee acquired title to this note and the vendor's lien, originally retained to secure its payment. The $5,000 note, described above, was given in renewal and extension of the balance due on the $6,000 note, and the $3,150 note, described above, was given in renewal and extension of the $5,000 note. The $3,150 note represented the balance due on the $6,000 note, and the renewals and extensions of the several notes also renewed and extended the vendor's lien, and by a regular chain of transfers, appellee was the legal owner and holder of both the note and the vendor's lien. On the 7th day of May, 1936, in the district court of Harris County, after securing title through its trustee, appellee secured judgment against Miss Thelma Wiedeman, a feme sole, for the title and possession of the land in controversy. Appellant knew of the pendency of that suit, and talked to Miss Thelma Wiedeman's attorney about her claim to the property and about the suit; and she, quoting the language of the court's fact conclusion, "testified that said attorney defended the suit for her benefit as well as for the benefit of Thelma Wiedeman."

Quoting from the court's fact conclusions:

"Thelma L. Wiedeman was a feme sole continuously from prior to April 25, 1923, when the property was conveyed to her up to the present time and has never been

married. She moved into the property as soon as the house was completed, in May or June of 1923, and lived in the only house on the property continuously from that date until September of 1936, when she and Tera Wiedeman removed from the property under threat of being evicted by a writ of sequestration issued in this suit and Thelma Wiedeman was living on the property at the time she made application to Houston Building and Loan Association for a loan thereon on 'January 23, 1928, and at the time she executed the first deed of trust to secure Houston Building and Loan Association, on February 9, 1928, and at the time she applied for a renewal of said loan in 1933 and at the time she executed the second renewal deed of trust to secure Houston Building and Loan Association on October 31, 1933.

"Houston Building and Loan Association paid full value, to-wit, $5,000.00, for the assignment to it of said $6,000.00 vendor's lien note by the Epstein heirs and purchased said note in good faith, as a bona fide purchase of a valid first lien upon said property, and had no actual knowledge of any claim of Tera Wiedeman to any interest in the property and there was nothing of record in Harris County to charge it with notice of any claim held or asserted by said Tera Wiedeman.

"Tera Wiedeman and her husband, Ernest Wiedeman, purchased this property, it then consisting of two vacant lots for $2600.00 by written contract of sale from D. C. Wright on November 5, 1921, and prior to April 25, 1923, paid thereon the sum of $1350.00, of which the sum of $950.00 was paid by Tera Wiedeman from her separate estate, leaving a balance unpaid in principal and interest upon said contract on April 25, 1923, of $1446.64. That on or about April 25, 1923, Tera Wiedeman orally authorized D. C. Wright to convey said property to O. P. Steeger, it being a part of the same oral agreement that O. P. Steeger would then convey the property to her daughter, Thelma Wiedeman, retaining a vendor's lien sufficient to cover the balance remaining unpaid on the purchase price and to cover the cost of the house which Steeger at that time constructed upon the premises and Tera Wiedeman at the same time delivered back to D. C. Wright the written contract of sale under which she and her husband were purchasing the lots.

"Tera Wiedeman knew that Thelma Wiedeman was making an application to Houston Building and Loan Association for a loan and by such application was requesting said Association to purchase and renew and extend the $6,000.00 vendor's lien note, when such application was made, in 1928, and knew that Thelma Wiedeman executed the loan papers to evidence such loan when the loan papers were executed and knew that said Association was paying out the money to purchase said $6,000.00 vendor's lien note when such money was paid out and did not at any of said times notify said Association that she was claiming an interest in the property. Tera Wiedeman knew that Thelma Wiedeman was making an application to said Association to renew and extend said loan, when such application for renewal was made in 1933 and knew that Thelma Wiedeman was executing a renewal and extension note and deed of trust, when she executed such papers, but did not notify said Association that she was claiming an interest in said property.

"Thelma Wiedeman on January 23, 1928, made a written application to Houston Building and Loan Association for a loan upon said property in the sum of $5,000.00. After said application was made and before the note and deed of trust were executed, on February 9, 1928, and before said Association had purchased said $6,000.00 vendor's lien note, a representative of said Association, to-wit, J. P. Lee, called on Tera Wiedeman and talked to her with reference to the loan and told her that Thelma Wiedeman had applied for a loan of $5,000.00 from the Association and asked her who owned the property and in response to said question she did not divulge to him the fact that she was asserting an interest in the property.

"Tera Wiedeman is the mother of Thelma L. Wiedeman, and separated from her husband prior to the filing by her of this suit and has remained separated from her husband during all the time the suit has been pending. Tera Wicdeman moved into said property with Thelma Wiedeman immediately after the house was completed by Steeger in 1923 and lived in said house continuously until she and her daughter, Thelma Wiedeman, vacated the property in September, 1936, under threat of eviction by writ of sequestration issued in this suit.

"Thelma Wiedeman was of age in 1928, at the time she made application for and secured a loan from Houston Building and Loan Association.

"William A. Wilson Company for more than two years prior to January 14, 1909, and D. C. Wright for more than eight years after that date had peaceable and adverse possession of the land in controversy, under fence, and said parties continuously used, occupied, cultivated, pastured and claimed the same under claim of right adverse to the world, open and well known, continuously for a period of more than ten years, and their claim was never challenged, either on the ground or in court."

On the facts the court made the following conclusions of law:

(a) Appellee was a bona fide purchaser of the $6,000·note and of the vendor's lien retained for its security, without actual or constructive knowledge of appellant's claim.

(b) By consenting to the conveyance of the property to Steeger and by surrendering her contract to Wright, and by authorizing the conveyance of the legal title to Thelma Wiedeman, appellant "is now estopped to assert her equitable title as against any person dealing in good faith with the owner of the legal title."

(c) "Because of·her fraudulent conduct in knowingly permitting the Association to purchase a lien upon said property without notifying the Association that she was asserting a claim to said property adverse to said lien, Tera Wiedeman is now estopped to assert such claim."

(d) "Because of her fraudulent conduct in concealing from a representative of said Association the fact that she was asserting a claim adverse to the lien which the Association was proposing to purchase, Tera Wiedeman is now estopped to assert such claim."

(e) "Because Tera Wiedeman knew of the defense being made to the suit by Houston Building and Loan Association against Thelma Wiedeman and discussed the case with the attorney representing Thelma Wiedeman and because she knew and testified in this case that the suit was defended for her benefit as well as for the benefit of Thelma Wiedeman, she is now estopped by the judgment rendered in favor of Houston Building and Loan Association in that case."

### Opinion.

As plaintiff in the trial court, appellee rested under the burden of establishing in itself the superior title to the land in controversy. It made no effort to establish title by a chain of transfers from and under the original grantee, but relied upon its pleas of limitation, and the supporting evidence. The evidence supports the following fact conclusion by the trial court on the issues of limitation:

"William A. Wilson Company for more than two years prior to January 14, 1909, and D. C. Wright for more than eight years after that date had peaceable and adverse possession of the land in controversy, under fence, and said parties continuously used, occupied, cultivated, pastured and claimed the same under claim of right adverse to the world, open and well known, continuously for a period of more than ten years, and their claim was never challenged, either on the ground or in court."

It would serve no useful purpose to detail the evidence on this issue. The testimony brought·forward by appellant, controverting the trial court's fact conclusion, is uncertain in its nature, and was based upon an imperfect understanding of the facts. All the testimony was before the court, and in making its conclusion, the trial court rested under the burden of construing the testimony; it satisfactorily supports the conclusion on limitation.

The following fact conclusion has support:

"The land in controversy * * * Was conveyed by the William A. Wilson Realty Company to D. C. Wright by deed dated January 14, 1909, and filed for record in Harris County January 15, 1909;"

This deed—if for no other reason—was before the court by appellant's evidence to establish her equitable claim.

We also affirm the following fact conclusion:

"Thelma L. Wiedeman was a feme sole continuously from prior to April 25, 1923 when the property was conveyed to her up to the present time and has never been married."

The court simply found that Miss Thelma Wiedeman was a "single," and not a "married" woman, and all the testimony was to that effect.

The following fact conclusion has support:

"A representative of said Association, to-wit, J. P. Lee, called on Tera Wiedeman and talked to her with reference to the loan and told her that Thelma Wiedeman

had applied for a loan of $5,000.00 from the Association and asked her who owned the property and in response to said question she did not divulge to him the fact that she was asserting an interest in the property."

In attacking this conclusion, appellant brings forward no evidence against it; she thus summarizes her own testimony on this point:

"Tera Wiedeman, the Plaintiff-in-Error now testified that some gentleman came out to her house and it might have been Mr. Lee, but she didn't remember having seen him before. She didn't remember the date or that she had a conversation with him."

While the testimony offered by appellee was not clear and positive, yet it sufficiently supports the court's conclusion.

Thelma Wiedeman, in possession of the property, holding it under a record title, renewed liens against it, and asserted every claim of ownership. Appellant, while living on the property with Thelma Wiedeman, had no claim of record, and openly asserted no claim to the property. When appellant had an opportunity to state her claim to appellee, she did not do so; she "did not divulge" her claim to appellee when it was her duty to speak. She was living in the home with her daughter, and had vested in her daughter every incident of ownership, which, as we have stated above, was openly and notoriously exercised, asserted, claimed and enjoyed by the daughter. On the evidence, the court's legal conclusion of innocent holder has support in Johnson v. Bingham, Tex.Civ.App., 251 S.W. 529; Strong v. Strong, Tex.Civ.App., 66 S.W.2d 751; Puckett v. Reed, 3 Tex.Civ.App. 350, 22 S.W. 515; Myers v. Crenshaw, Tex.Civ. App., 116 S.W.2d 1125; Brinkman v. Tinkler, Tex.Civ.App., 117 S.W.2d 139.

The judgment of the lower court must be in all things affirmed, and it is accordingly so ordered.

Affirmed.

### On Rehearing.

On appellant's request, we make the following additional findings: Appellee did not establish a record title to the two lots in controversy. But, in this connection, we affirm the trial court's fact conclusion, that appellee established a title by limitation. Appellant and her husband paid $1,350 on the contract to purchase the two lots; we also make the following finding at her request:

"The Plaintiff-in-Error requests the court to find that the balance due on the purchase money contract of the two lots was Fourteen Hundred Forty-six Dollars and Sixty-Four Cents ($1446.64). That the balance due on the contract was of March 23, 1923.

"That Plaintiff-in-Error paid $400 and $550.00, a total of $950.00 from her separate personal estate."

In all other respects, the motion for rehearing is overruled.